**EX PARTE Albert Junior DAWSON, Applicant**

**NO. WR–85,612–02**

Court of Criminal Appeals of Texas.

FILED: November 23, 2016

Albert Junior Dawson, San Antonio, TX, pro se.

Jay Johannes, County Attorney, Columbus, TX, Lisa C. McMinn, State's Attorney, Austin, TX for the State.

Keasler, J., filed a concurring opinion, in which Keller, P.J., and Hervey, Richardson, Yeary, and Newell, JJ., joined.

This Court properly denies Albert Dawson's application for writ of habeas corpus in which he alleged that his ten-year term of confinement for forgery is illegal and he received ineffective assistance of counsel. After reviewing the writ record, including Dawson's pleadings and trial counsel's response to the allegations, a writ staff attorney drafted a memorandum analyzing Dawson's claims and recommended that Dawson's claims be denied based on the record.

The author of the other concurring opinion, to whom this writ application was administratively assigned, agreed with the writ staff attorney's recommendation that Dawson's application be denied because it is meritless. The same author sought the formal votes from the entire Court, but it was not legally necessary. Because this application satisfied the criterion in the

Court's standing internal procedures, she had the authority to lawfully deny Dawson's application by her signature alone.

The concurrence accuses the Court's judges of violating the Texas Constitution and statutes in how the Court resolves certain applications for writ of habeas corpus. The accusations require a response. We have never had to explain this long-established practice, much less defend it. Yet today, we find ourselves defending it, and by extension the Court itself, against an attack from one of our own—one who for the last five years has done what she now suddenly condemns. I hope this response provides further insight and transparency into the Court's inner workings.

Long before I arrived at this Court in 1999, the Court's judges instituted standing internal procedures and rules permitting certain Texas Code of Criminal Procedure Article 11.07 writ applications to be administratively and randomly assigned to a single judge for review and, if warranted, resolution. The standing procedures regarding these "non-conference" writ applications experienced only slight revisions over the years, as needed, and remain in effect today, substantively unchanged.

"Non-conference" writ applications are narrowly defined. Every application for a writ of habeas corpus this Court receives is initially reviewed by a writ staff attorney who focuses solely on Article 11.07 writ applications and extraordinary writ petitions. After reviewing the entire writ record, including any habeas judge's findings of fact and conclusions of law, writ staff draft memoranda analyzing every claim an applicant asserts. Only when the writ staff attorney and the assigned judge

of this Court (normally in consultation with his or her own staff) agree that an application is meritless may a judge deny or dismiss the application without formally collecting the other Judges' votes. A significant number of these applications contain a habeas judge's findings of fact, conclusions of law, and recommendation that this Court deny or dismiss the application. A vast majority of non-conference writ applications fail to allege sufficient facts that, if pleaded and determined to be true, may entitle them to relief,[1] including those asserting the particular claims the concurrence highlights. Ineffective-assistance-of-counsel claims often fail to plead why counsel's deficit performance prejudiced them. *Brady v. Maryland*[2] claims are often unaccompanied by any explanation why certain evidence was material. Some "new evidence" claims arrive without explanations why the evidence is new. Even more assert claims that may not be brought on habeas corpus or are statutorily or procedurally barred. In all other circumstances, an application receives all of the judges' individual, formal votes. These include, for example, when (1) in a writ staff attorney's opinion, the record or the law may support an applicant's claim to relief despite the habeas judge's recommendation to deny or dismiss; (2) remanding to the habeas court is appropriate to gather additional findings of facts concerning the claim (when the case returns from remand, it also receives all of the judges' individual, formal votes); (3) the writ staff attorney recommends the application be filed and set to be resolved with an opinion because applicant raises a novel legal argument or the law applicable to a claim is

---

1. *See Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex. Crim. App. 1985) ("In a postconviction collateral attack, the burden is on the applicant to allege and prove facts which, if true, entitle him to relief.").

2. 373 U.S. 83 (1963).

unclear; (4) an adequately pleaded application presents a close legal or factual question of whether the claim should be granted or denied under settled law and the writ staff attorney recommends all judges review the application; (5) the writ staff attorney or the habeas judge recommends granting some form of relief; (6) the assigned judge disagrees with the habeas judge's or writ staff's recommendation; or (7) the assigned judge, in his or her discretion, calls for the other judges to formally vote.

Texas Code of Criminal Procedure Article 11.07, § 5 provides that "[t]he Court of Criminal Appeals may deny relief upon the findings and conclusions of the hearing judge without docketing the cause," or the Court may docket the cause and hear the writ application like an appeal. A single judge's denial or dismissal of a "non-conference" application is an example of the former; filing and setting an application for an opinion an example of the latter. The concurrence correctly notes that § 5 empowers the Court of Criminal Appeals to decide an application's merits and grant or deny an applicant relief. But even assuming the statute's use of "Court of Criminal Appeals" means the Court sitting en banc or in panels, as the concurrence alleges the Texas Constitution requires, the remainder of the opinion mischaracterizes the Court's established procedures.

Although required by neither the Constitution nor statute, the Court resolves every habeas corpus application en banc, and does so in a manner consistent with our Constitution. Texas Constitution Article V, § 4(b) mandates, among other things, that when the Court considers a case en banc, "five Judges shall constitute a quorum and the concurrence of five Judges shall be necessary for a decision." Section 4 imposes no limitations on this Court as to how the necessary concurrence may be achieved. The Constitution does not mention, much less prescribe, the manner of voting on a particular matter. It does, however, permit the Court to establish rules for how the en banc Court convenes.[3]

The internal operating procedures establish both how the Court convenes on "non-conference" applications and how a concurrence of at least five judges forms. Importantly, the procedures' adoption required and garnered the concurrence of at least five Judges. By permitting a judge to dispose of specific writ applications, the remaining judges have authorized the judge to whom the application is assigned to sign off on an application on their behalf in those limited, delineated circumstances. So when a "non-conference" application is denied or dismissed, the assigned judge disposes the application with the concurrence of not fewer than five judges of the en banc Court. In practical terms, the application's denial or dismissal is nothing more than a *per curiam* order, an action taken for the Court as a whole under very specific circumstances.

The competing concurrence takes issue with the *per curiam* order analogy because, in her opinion, *per curiam* orders are only proper based on pre-approved circumstances that do not require assessment of factual matters and on which there is unanimous agreement.[4] But the proposed boundaries for *per curiam* orders would not permit many of the Court's other practices, none of which are contested.

---

**3.** Tex. Const. art. V, § 4 ("The Presiding Judge, under rules established by the court, shall convene the court en banc for the transaction of all other business and may convene the court en banc for the purpose of hearing cases.").

**4.** *See post,* at 303–05.

For instance, this approach would not permit the Court's current procedure establishing a rotating "duty judge" to grant or deny certain motions—procedures the concurring author has never contested—that require assessment of factual matters. The Court's summary dismissals of writ applications failing to comply with the Texas Rules of Appellate Procedure are also notably absent from the concurring author's concerns. Those applications are dismissed without a judge's approval, even though we may, and in certain cases do, overlook noncompliance if the application's merits are clear.[5] Nonetheless, the concurrence would surely agree that our procedures properly deny or dismiss an application lacking a necessary factual pleading and need not be formally voted on by the en banc Court or even a three-judge panel. After all, there would be no factual matter to assess in applying our legal standards.

Of course, the en banc Court is free to change these institutional practices at any time. But the continued practice of this established procedure by the Court's majority evinces the judges' confidence that the Court's procedures are fair, efficient, and constitutional.

To be sure, the Court's procedure on non-conference writ applications does not give a single judge a monopoly on that application's disposition. A judge and his or her staff have always had the ability to review any pleading this Court receives. By virtue of the Court's move to electronic records maintained in a central repository, judges and their staffs can now more quickly and easily review electronically every pleading shortly after it is received. All of writ staff's memoranda analyzing each claim on every application are available for review electronically in a common repository. And through the Court's internal case-management system, all judges and their staffs can view the status of any matter and learn to whom it is assigned. The procedures do not prevent a judge from requesting discussion on a particular application, even one not assigned to that particular judge. As a member of this Court for five years, the concurring author is undoubtedly aware that a request to discuss a matter means that all judges discuss the matter in conference and all judges may participate in the matter's resolution. Allegations that these procedures deny any judge of this Court the ability to review and decide applications, especially to the degree it deprives that judge of purported "rights," are legally and factually unfounded.

With these comments, I concur in the Court's denial of Dawson's claims.

Alcala, J., filed a concurring opinion.

The instant habeas application is representative of hundreds, and possibly thousands, of procedurally similar applications that are being disposed of as if they had been considered by a quorum of this Court, but in actuality are seen and considered by only a single judge on this Court. Under the routine internal procedures employed by this Court for cases in this procedural posture, this post-conviction habeas application filed by Albert Junior Dawson, applicant, was randomly assigned only to me for the purpose of denying habeas relief based on my sole participation. That assignment to me, as a single judge, that permits me under this Court's routine internal procedures to act alone on this case, occurred because a staff attorney for the Court reviewed this case and determined that it fell within the categories of cases that may be decided in this manner—by a lone judge rather than by all judges or a panel of the judges elected to

---

**5.** *See, e.g., Ex parte Golden*, 991 S.W.2d 859, 861 (Tex. Crim. App. 1999).

this Court. Rather than act alone on this case, I requested a vote from a quorum of this Court, which has voted to deny relief. I agree with that decision. I, however, write separately to express my concerns about this Court's internal procedures that permit its individual judges to decide cases like the instant one on their sole vote without the participation of a quorum of judges of this Court. For over a month, I have objected to these internal procedures that authorize a single judge to dispose of a case, and I have requested that I be permitted to vote and participate in these cases that are being resolved in this manner by other judges of this Court. My request has been ignored, and this practice continues by a majority of individual judges on this Court. In this opinion, I explain the basis for my conclusion that the practice of denying habeas relief by the vote of a single judge on this Court conflicts with the plain terms of the Texas Constitution and the Code of Criminal Procedure, which together require that a quorum of this Court's judges decide these cases. To address the large volume of pending habeas applications in this Court, we should instead change our procedures so that habeas applications are decided by panels of three judges, as permitted by the Texas Constitution. Furthermore, using three-judge panels to decide habeas applications instead of the en banc Court will allow each judge to give more attention to each habeas application because there will be fewer cases to resolve individually than if decided en banc. Moreover, it will give each of the judges on this Court more time to resolve direct appeals, motions for stays of execution in death-penalty cases, and petitions for discretionary review, thereby resulting in more prepared decision-making by this Court.

## I. Background

Habeas applications like this one routinely begin with an analysis by a member of this Court's staff who, after considering certain guidelines, makes a decision either (1) to have only a single judge on this Court review whether to deny relief on the case or (2) to have the case reviewed by a quorum of the Court. In this case, a staff member determined that it would be proper for a single judge to review whether to deny relief and this case was randomly administratively assigned only to me for that purpose. Because I disagreed that it would be appropriate for a single judge to alone decide to deny habeas relief in this case, I presented this application to the en banc Court for full participation and a vote. But if this application had been assigned to another judge on this Court who believes that he or she alone may deny relief, then, in all likelihood, that judge would have denied it without participation by a quorum of judges on this Court.

In the present case, applicant was convicted of forgery of a financial instrument, and he was sentenced to ten years' imprisonment. He has filed the instant habeas application challenging that final felony conviction under Article 11.07 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. Art. 11.07. In his application, applicant contends that his sentence is illegal and that his trial counsel was ineffective. The habeas court received an affidavit from trial counsel, but it did not make findings of fact or conclusions of law addressing applicant's claims. The habeas court forwarded the habeas record to this Court so that we could make the ultimate decision whether to grant habeas relief to applicant. In accordance with this Court's internal procedures, the instant habeas application was reviewed by this Court's staff. A staff member recommended that relief be denied and that this case be assigned to a single judge who, if he agreed with that recommendation, would sign an

order to that effect without consulting the en banc Court. I was randomly assigned this habeas application under those procedures.

Today, because I requested the participation of the en banc Court, a majority of the en banc Court, including me, has voted to deny habeas relief. Substantively, I agree with how the instant case has been resolved, and, procedurally, this case has been properly decided by a quorum of this Court. Although the procedures in this case have been proper, that is not the situation for hundreds, if not thousands, of applicants in an identical procedural posture to this applicant. Those applicants are being denied relief in a manner that is unauthorized by the Texas Constitution and statutes based on the decision of certain individual judges on this Court who, acting alone, deny relief on those cases.

## II. Analysis

As I explain more fully below, the Texas Constitution requires a decision by a quorum of judges on this Court, and thus a denial of habeas relief by a single judge on this Court fails to comply with this requirement. While it is true that the Texas Constitution gives individual judges on this Court the power "to issue the writ of habeas corpus," that power does not apply to Article 11.07 habeas applications because the Code of Criminal Procedure provides that the issuance of the writ in this context is done by the convicting court rather than by this Court as a whole or its individual judges. Furthermore, the Texas Constitution's mandate that a quorum of judges decide this Court's cases is not satisfied by what is effectively a standing order of this Court that permits an individual judge to act as a proxy for a quorum of the judges on this Court on the basis of a pre-vote on a category of cases that are

never actually individually seen by any judge other than the proxy judge.

### A. Texas Constitution Requires a Decision By a Quorum of Judges

When this Court receives a habeas application seeking relief under Article 11.07 of the Texas Code of Criminal Procedure, as here, the Texas Constitution requires that this Court decide those applications either by a panel of three judges or by the en banc Court. *See* TEX. CODE CRIM. PROC. Art. 11.07; TEX. CONST. Art. V, § 4(b). Nothing in the Texas Constitution or statutes authorizes a single judge on this Court acting alone to decide habeas applications.

Section four of Article five of the Texas Constitution governs the manner in which the Court of Criminal Appeals must convene to decide its cases, and it permits the Court in non-death-penalty cases to sit in panels of three or en banc. TEX. CONST. Art. V, § 4. It states,

COURT OF CRIMINAL APPEALS; JUDGES.... (b) For the purpose of hearing cases, the Court of Criminal Appeals may sit in panels of three Judges, the designation thereof to be under rules established by the court. In a panel of three Judges, two Judges shall constitute a quorum and the concurrence of two Judges shall be necessary for a decision. The Presiding Judge, under rules established by the court, shall convene the court en banc for the transaction of all other business and may convene the court en banc for the purpose of hearing cases. The court must sit en banc during proceedings involving capital punishment and other cases as required by law. When convened en banc, five Judges shall constitute a quorum and the concurrence of five Judges shall be necessary for a decision. The Court of Criminal Appeals may appoint Commissioners in aid of the

Court of Criminal Appeals as provided by law.

*Id.* Thus, under its plain terms, the Texas Constitution sets forth two ways that this Court may decide its non-death cases. First, this Court may sit in panels of three judges under rules established by the Court, and this requires two judges for a quorum and decision. *Id.* Second, alternatively, this Court may be convened en banc by the Presiding Judge under rules established by the Court, and this requires five judges for a quorum and decision. *Id.* Regardless of which of these two methods is used for deciding a non-death-penalty case, as here, it is abundantly clear that the Texas Constitution expressly mandates that decisions be made by three-judge panels or the en banc Court for non-capital cases resolved by the Court of Criminal Appeals. Nothing in the Texas Constitution, therefore, authorizes a single judge on this Court to alone decide a habeas application or any other matter.

**B. The Texas Constitution Gives Individual Judges on this Court the Power To Issue a Habeas Writ, But It Does Not Authorize an Individual Judge to Deny Relief in the Absence of a Quorum of Judges**

In general, it is true that the Texas Constitution gives each judge on this Court the power to issue habeas writs. *See* TEX. CONST. Art. V, § 5(c). But that only means that each judge can individually decide whether a habeas applicant must be brought before the judge by the restrainer to explain why the applicant is being held. This does not mean that each judge on this

Court alone has the power to grant or deny relief on a habeas application in the absence of a quorum of this Court. In any event, with particular respect to habeas applications under Article 11.07, as here, that type of writ is issued by operation of law by the convicting court, and this Court has no role in issuing that writ. *See* TEX. CODE CRIM. PROC. Art. 11.07, § 3(b). For Article 11.07 habeas applications, therefore, the Texas Constitution's grant of authority that permits judges on this Court to individually issue the writ is inapplicable to this type of writ that is issued by operation of law only by the convicting court. *See id.* I explain this analysis more fully below.

The plain language of the Texas Constitution generally gives the judges on this Court the individual power to issue a writ, but that power is subject to regulation by the Legislature, which has decided not to permit the exercise of that power for Article 11.07 writs. Subsection (c) in Section five of Article five of the Texas Constitution discusses the power of each judge on this Court to "issue the writ," which means that the restrainer is commanded to bring the restrained person before the judge.[1] TEX. CONST. Art. V, § 5(c). That Section states,

*Subject to such regulations as may be prescribed by law,* the Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus, and, in criminal law matters, the writs of mandamus, procedendo, prohibition, and certiorari. The

---

1. A judge's decision to issue a writ merely means a command to bring the restrained person before the judge; it does not mean that relief under the writ is being granted or denied. *See* TEX. CODE CRIM. PROC. Art. 11.01. Article 11.01 states,

The writ of habeas corpus is the remedy to be used when any person is restrained in

his liberty. It is an order issued by a court or judge of competent jurisdiction, directed to any one having a person in his custody, or under his restraint, commanding him to produce such person, at a time and place named in the writ, and show why he is held in custody or under restraint. *Id.*

Court and the Judges thereof shall have the power to issue such other writs as may be necessary to protect its jurisdiction or enforce its judgments. The court shall have the power upon affidavit or otherwise to ascertain such matters of fact as may be necessary to the exercise of its jurisdiction.

*Id.* (emphasis added).

In plain-speak terms, the above quoted portion of the Texas Constitution has two provisions that control the issuance of extraordinary writs in criminal cases by individual judges on this Court or by this Court. First, the Texas Constitution gives the Court of Criminal Appeals and each of its judges the power to issue extraordinary writs in criminal cases. *Id.* Second, the Texas Constitution limits that power through regulation by the Legislature. *Id.* Because the Texas Constitution expressly gives an individual judge on the Court of Criminal Appeals the power to issue a writ of habeas corpus subject to legislative regulations, it is necessary to examine those regulations that have been enacted in the Code of Criminal Procedure. As I explain below, the Legislature has regulated Article 11.07 writs to exclude this Court and its individual judges from the issuance of an Article 11.07 writ; under the Code, an Article 11.07 writ is issued by operation of law only by the convicting court. TEX. CODE CRIM. PROC. Art. 11.07, § 3(b).

Article 11.07 in the Code, entitled "Procedure After Conviction Without Death Penalty," sets forth the procedures for an application for a writ of habeas corpus in which the applicant seeks relief from a felony judgment imposing a penalty other than death. *See* TEX. CODE CRIM. PROC. Art. 11.07, § 1. In pertinent part, section three of Article 11.07 sets forth the procedures for this type of habeas application:

(1) the habeas application must be filed with the clerk in the county in which the conviction being challenged was obtained, and the clerk shall assign the application to that court,

(2) the convicting court that receives the application "shall issue by operation of law" a writ of habeas corpus returnable to the Court of Criminal Appeals,

(3) the clerk of the convicting court assigns a case number to the application and forwards a copy of the application to the State's attorney, who shall answer the application within a certain period of time after receiving a copy of the application, and

(4) the convicting court decides that either (a) there are controverted, previously unresolved facts material to the legality of an applicant's confinement, in which case the court shall enter an order designating the issues of fact to be resolved within a specified time period; the court or its designee shall hold a hearing and make factual findings; and the clerk of the court shall immediately transmit the record to the Court of Criminal Appeals, or (b) there are no controverted, previously unresolved facts material to the legality of the applicant's confinement, in which case the clerk shall immediately transmit the record to the Court of Criminal Appeals.

*See id.* Art. 11.07, § 3.

As shown in the second step described above, the matter of whether the writ should issue in an Article 11.07 habeas application has been set forth in the statute, which specifies that the convicting court that receives the application "shall issue by operation of law" a writ of habeas corpus returnable to the Court of Criminal Appeals. *See id.* Under the terms in the Code, therefore, by the time that this Court receives the writ record as described in the fourth step above, the writ has already been issued by the convicting-court judge by operation of law. *See id.*

Thus, a suggestion that a single judge on this Court may deny an Article 11.07 habeas application because he is merely exercising his constitutional authority to decline to issue the writ is misguided. The issuance of the writ in an Article 11.07 case had already occurred in the convicting court that issued the writ by operation of law, long before this Court or any judge on this Court received the writ application and record.

As shown in the fourth step described above, after the convicting court issues the writ by operation of law, the convicting court sends the record to this Court (either with its factual findings or with its determination that there are no controverted, previously unresolved facts material to the legality of the applicant's confinement). This Court then decides whether to grant relief on the habeas application under the parameters set forth by the Legislature in what effectively is a fifth procedural step that applies to Article 11.07 cases. *See id.* Art 11.07, § 5.

The fifth step for resolving Article 11.07 cases consists of this Court docketing and hearing this type of case through the same procedures employed for other decisions by this Court, with the exception that this Court may deny relief based on the findings and conclusions made by a habeas judge. Section Five in Article 11.07 states, "The Court of Criminal Appeals may deny relief upon the findings and conclusions of the hearing judge without docketing the cause, or may direct that the cause be docketed and heard as though originally presented to said court or as an appeal."

*See id.* In plain-speak terms, this provision means that the Court of Criminal Appeals may either (1) deny relief in Article 11.07 cases by order of this Court based on the findings issued by the convicting-court judge, or (2) hear the case by filing and setting it and handling it as it would petitions for discretionary review, possibly with oral argument and a full written opinion. Given that the Code provides for Article 11.07 habeas applications to be decided through two possible procedural vehicles, I discuss these options in more detail.

The first procedural vehicle that this Court may employ to decide whether to deny relief in an Article 11.07 habeas application occurs when a habeas judge has made findings of fact and conclusion of law recommending that habeas relief be denied. In that situation, this Court may deny relief by a written order without docketing the cause. In the instant case, this method is inapplicable because this habeas judge did not make findings of fact and conclusions of law. But even if he had made findings of fact and conclusions of law, because the plain language in the Code describes the procedure for reaching a disposition under these circumstances as requiring a decision by "[T]he Court of Criminal Appeals," as compared to a decision by a single judge on this Court, this Court may only deny relief if a quorum of judges participates in the decision to adopt the habeas court's findings and conclusions.[2] *See id.*

The second procedural vehicle in Section Five in Article 11.07 is engaged whenever

---

[2] This provision permits denial of relief based on the habeas court's findings and conclusions. Its plain language does not apply to dismissal of an Article 11.07 application on the basis that it is a subsequent habeas application. In this opinion, I have focused on Article 11.07 applications because that is what the instant habeas application is. I note that Article 11.07 applications could be initial or subsequent, and the law on subsequent habeas applications is not as clear about who or what entity is charged with issuing the writ. I leave my assessment of the proper handling of subsequent habeas applications for another day.

this Court does not rely upon the habeas court's findings and conclusions as a basis for denying relief. The Code's plain language provides that in all other circumstances the "Court of Criminal Appeals ... may direct that the cause be docketed and heard as though originally presented to said court or as an appeal." *Id.* This portion of the Code's provision applies here because the habeas court did not make findings of fact and conclusions of law in this case. Applications like the instant one, in which there are no findings and conclusions by the habeas judges, must be decided by a quorum of this Court, just like direct appeals in death-penalty cases and opinions issued on petitions for discretionary review. *See id.*

**C. A Standing–Type General Order That Permits an Individual Judge to Deny Habeas Relief Based on Categories of Cases By Acting as a Proxy for a Quorum of Judges Conflicts With the Texas Constitution and Code of Criminal Procedure**

As explained above, the Texas Constitution mandates that a quorum of judges decide this Court's non-capital cases. This Court's internal administrative procedure that effectively operates as a standing order to permit a single judge to deny habeas relief for certain categories of Article 11.07 habeas applications based on a predetermined proxy vote in the absence of actual consideration of each case by a quorum fails to comply with the Texas Constitution and Code. The possible reason for suggesting that a single judge's decision on certain habeas cases does satisfy the dictates of the Texas Constitution is that a majority of the members of this Court have approved of the procedure authorizing categories of cases to be decided by a single judge, and, therefore, the single judge's vote serves as a proxy for the votes of the remaining non-participating judges

who have, in essence, pre-authorized that judge to vote on their behalf in a particular manner. That reasoning is problematic for four reasons.

First, the vote of a single judge cannot serve as a valid proxy for the vote of a quorum of judges that is required by the Texas Constitution for decisions by this Court. The plain language in the Code requires that, in the absence of findings and conclusions from a habeas judge that this Court deems adequate to justify the denial of relief, Article 11.07 applications must be handled like direct appeals or petitions for discretionary review, which require a quorum by this Court. But even when a judge has made findings of fact and conclusions of law, a quorum is required because the statute refers to a decision by the Court rather than by individuals on the Court. A single judge's ruling denying habeas relief does not satisfy the quorum requirement of five judges for the en banc Court or two judges for decisions by panels of the Court.

Second, although it is proper for courts to use standing orders or proxy votes in limited circumstances, those procedures are improper for decisions that result in a final judgment denying habeas relief. I agree with this Court's internal procedures that permit a single judge to act as a "duty" judge to resolve certain types of procedural motions, but those motions do not constitute a final judgment as to the merits of a legal claim for relief presented to this Court, as in the case of this Court's denial of a habeas application. Similarly, this Court has an internal standing order that permits summary dismissals of petitions for discretionary review based on violations of certain rules of appellate procedure, but, in those cases, litigants are permitted to correct those violations and refile their cases within a certain period of time. A single judge may properly grant or

deny a motion for an extension of time to file a motion or brief, or a standing order may strike a pleading under circumstances in which it also permits a party to refile the pleading within a certain length of time. Those types of procedural rulings are not, as in this type of case, final decisions on the ultimate merits of a case in which a single judge decides to sign an order denying habeas relief to an applicant. It, therefore, is misleading to compare the proper types of standing orders or proxies with the type of ruling at issue here.

Although my focus is on the plain language in the Texas Constitution and the Code, I note that, even as a practical matter, a standing order or proxy would be inappropriate in deciding habeas cases because the categories of cases are too broad to characterize as cases on which there would be no disagreement by a quorum of judges. For example, in some of these cases, staff attorneys have decided that applicants have failed to plead facts that may entitle them to relief. But pro se pleadings must be liberally construed by judges. It, therefore, would be inaccurate to assume that I would make the same decision that pleadings are inadequate as every other judge on this Court, or vice versa. That is precisely the type of discretionary decision that should be made by a quorum of this Court. The range of types of claims at issue in habeas applications further demonstrates the inappropriateness of a standing order or single-judge proxy vote for the denial of relief. Habeas applications invoke broad areas of law. These claims often involve fact-intensive legal questions that necessarily call for analysis and deliberate decision-making by each individual judge. Currently, the types of claims being resolved by a single judge include claims of ineffective assistance of counsel, claims under *Brady v. Maryland*,[3] and claims pertaining to newly discovered evidence of innocence or newly discovered scientific evidence, to name a few. Because reasonable minds might disagree as to the proper resolution of such matters, particularly when they are presented in a myriad of different factual contexts, under these circumstances, a single judge cannot act as a proxy for other judges who have reviewed neither the pleadings nor the record. These types of allegations should be decided by a quorum of this Court and not by a single judge who alone decides against granting relief.

Third, a single judge has exclusive control over the disposition of the Article 11.07 applications that are randomly assigned to him for resolution by his sole vote. This Court's internal procedures require staff members to distribute this type of habeas application only to that judge and not to a quorum of this Court. But even assuming that I could theoretically review the pleadings for each Article 11.07 writ application that has been designated for resolution by a single particular judge by going to this Court's clerk's office and examining all of the habeas filings that are pending in this Court, and even assuming that I communicated my vote to each of the single judges who had been randomly assigned each of these cases, the single judge to whom the case had been administratively assigned would have exclusive authority to simply ignore my comments. Because I had not been formally assigned to sit in judgment of the case, I would not have any authority to affect the case's resolution. For this reason, it is inaccurate to suggest that I can participate in cases that have been tendered to a single judge for resolution. But even if that single judge decided to consider my vote along with his in deciding how to rule on a particular

3. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215      (1963).

case, that still would not solve the problem of these cases being decided in the absence of a quorum of this en banc Court. It is a logical fallacy to suggest that the problem of the lack of a quorum of judges to decide the case en banc could be solved by the participation of two judges when the five are needed for en banc consideration. Unless this Court moves to system in which a panel of judges decides each case, as I suggest below, two judges are not enough to deny an Article 11.07 habeas application. And although some may suggest that this could be characterized as me being permitted to participate in the case, no one could reasonably argue that this could be considered meaningful participation, given that my vote would not be given any legal effect. Because this Court has not established panels for deciding these cases, as I suggest would be a preferable procedure for resolving habeas applications, the participation of two judges does not meet the quorum requirement in the Texas Constitution, which requires five judges of the en banc Court.

Furthermore, a suggestion that all I need to do is ask and that I will be permitted to participate in the decisions in these cases is inaccurate. I asked. When I was ignored by a majority of the judges on this Court, I wrote this concurring opinion.

The bottom line is that this Court has adopted internal procedures that conflict with statutory and constitutional provisions requiring a quorum of the judges to make decisions on whether habeas relief should be denied by permitting certain categories of habeas cases to be decided by a single judge without a vote by the en banc Court. In a substantial number of Article 11.07 habeas applications, this Court has relegated its decision-making to staff attorneys who decide whether only a single judge on this Court will decide the

case or whether a quorum of this Court will decide it. This practice is unauthorized by the Texas Constitution and the Code provisions that require a quorum of judges to decide habeas applications, and that requirement is not fulfilled by a standing order or proxy pre-vote, sight unseen, on whole categories of cases.

Fourth, because some judges do submit these cases to a quorum of the Court while others do not, all applications for habeas relief are not treated equally under the current procedural system. In the instant case, as the judge who has been assigned this case for denial of relief on my sole consideration, I did submit the case to a quorum of judges on this Court. Judges on this Court have that prerogative, and, in that event, these cases could be discussed at a weekly meeting held by the judges on this Court, but that would be the exception for this Court, in general, rather than the rule. For several judges on this Court, we always seek a quorum of the Court for these types of cases. For a majority of the judges on this Court, they deny relief on their sole consideration in the absence of a quorum. In any event, the fact that some judges of this Court handle these cases properly does not explain why all of the judges are not handling these cases properly. Nor does the fact that a few judges handle Article 11.07 writs properly mitigate the harm that inherently follows when a court acts inconsistently. I would hold that a single judge on this Court who decides Article 11.07 habeas applications based on his sole vote acts in a manner that is unauthorized by the Texas Constitution and the Code, and I again respectfully urge this Court to institute policies disallowing this practice so that a quorum of this Court is required any time that this Court grants or denies relief, or dismisses a case under circumstances in which it

cannot be refiled without prejudice.[4]

## III. Deciding Habeas Applications in Panels of Three Is Superior to En Banc

Changing this Court's practice for deciding habeas applications to a system that determines cases by panels of three judges would be superior to the present system that permits decisions on these cases by a single judge, which is unauthorized as discussed above, and it would be preferable to a system that would require a decision by the en banc Court, which is unwieldy as explained below.

It is time for this Court to reconsider the wisdom of the age-old institutional practices that have resulted in this Court deciding cases in a manner that is inconsistent with the plain terms in the Texas Constitution and statutes, and that have resulted in a lack of judicial scrutiny being applied to the habeas applications that are filed in this Court. The volume of cases pending in this Court compels us to change long-term institutional practices that either are incompatible with Texas law or that cause this Court's judges to have minimal time to prepare for and decide the large number of cases before it.

According to the Texas Office of Court Administration, in fiscal year 2015, this Court disposed of 9,823 cases. Almost half of those cases, 4,429 cases, were non-death habeas applications, as in the present case. The other cases included death-penalty direct appeals, motions for a stay of execution filed by applicants with an impending execution date, applications for writs of habeas corpus in death-penalty cases, and petitions for discretionary review.

Given that the total number of cases disposed of by this Court in fiscal year 2015 was around 9,800 cases, this means that, assuming that every judge was involved in and voted on every case, each judge on this Court had about twelve minutes to spend on each case.[5] No one can seriously believe that this is an adequate amount of time to resolve these cases. I, therefore, propose that, in an effort to permit each judge a better opportunity to more meaningfully decide habeas applications, this Court should decide non-death habeas applications in panels of three judges. That would mean that each judge would be required to resolve only one-third of the approximately 4,000 habeas applications filed in this Court each year, or around 1,300 cases. A panels system would reduce every judge's workload by about 2,700 cases, and thus that would mean that each judge would be required to

---

**4.** Because neither the law nor the facts support this Court's actions, the other concurring opinion personally attacks me as a means of persuasion. I need not and will not engage in that type of discourse. It is true that when I joined the Court in 2011, the eight judges whom I joined on this Court were handling habeas applications in the manner discussed in this opinion. I presumed that the practice was lawful and abided by this Court's internal procedures. In 2015, three new judges were elected to this Court, and, after some time on this Court, one or more of them began to question this practice. At that time, I began my own investigation into this problem and ultimately discontinued my practice of deciding habeas applications by my lone partic-

ipation. Some other judges on this Court have also stopped that practice. But a majority of the judges on this Court continue to decide habeas applications by their sole vote, even after this problem has been brought to their attention. Judges make honest mistakes, especially when they are new to a court. But, at this juncture, this is no longer an honest mistake. Rather, this is an intentional and knowing refusal to abide by the plain terms of the Texas Constitution and statutes.

**5.** Assuming that he works forty hours a week for fifty weeks a year, a judge works 2,000 hours a year. Dividing this across 9800 cases equates to around twelve minutes per case.

decide approximately 7,100 cases a year as compared to the almost 10,000 cases he would otherwise have to decide, and he would have about fifteen minutes per case instead of the twelve minutes that are available when all decisions are made en banc.[6] Of course, this is an average amount per case, and some cases may be decided in minutes, while other cases may require an investment of time of weeks, and some even months. But on average, this would be a great improvement in allowing each judge more time to reach better educated decisions in these cases.

A majority of the judges on this Court could easily establish rules that provide for panels of three judges to be determined by a computer program that would randomly assign the panels to be changed two or three times a year. To the extent that this Court may desire en banc participation for certain types of habeas applications, this Court could also set up rules that would require an en banc vote under certain circumstances, such as when this Court considers whether a state statute is unconstitutional or when this Court declares a defendant actually innocent. This is a small step that could be quickly done by this Court with little fanfare, and it would mean a significant improvement in the manner in which this Court resolves postconviction cases. Importantly, a panels system would remove the current practice by single judges who are deciding cases by their sole vote in a manner that is not permitted by the Texas Constitution and statutes, which require a decision by a panel of judges or the en banc Court.

### IV.  Conclusion

The individual judges on this Court who are resolving habeas applications without a quorum of a panel of judges or a decision by the en banc Court are doing so in the absence of any constitutional or statutory authority. And their individual decisions are depriving myself and the rest of the judges not assigned to a given case of our rights under the Texas Constitution to meaningfully participate in these decisions either as a member of a panel of judges assigned to these cases or as part of the en banc Court. Because this applicant's case was assigned to my chambers, rather than to another judge's chambers, this case was decided by the en banc Court in conformance with Texas law, and I therefore agree with this Court's decision. With these comments, I concur in this Court's judgment denying relief to applicant.

---

6. Assuming that he works forty hours a week for fifty weeks a year, a judge works 2,000 hours a year. With a reduction of 2700 cases, each judge would participate in approximately 7,100 cases. That would mean that he could spend about fifteen minutes per case.