**EX PARTE Peter John BERNAL, Applicant**

**NO. WR–84,895–02**

Court of Criminal Appeals of Texas.

FILED: December 14, 2016

Peter John Bernal, pro se.

Matthew B. Howard, District Attorney, Bexar County, San Antonio, TX, Stacey Soule, State's Attorney, Austin, for the State.

Keller, P.J., filed a concurring opinion in which Keasler and Hervey, JJ., joined.

I address Judge Alcala's concurring opinion because it and her recent concurrence in *Ex parte Dawson*[1] evidence some

---

1. *Ex parte Dawson*, 509 S.W.3d 294, No. 85,- 612–02, 2016 WL 6946927, 2016 Tex. Crim.

confusion about our Court's procedures and statistics. Although both opinions concern the same issue, the concurrence in *Dawson* is more detailed in some respects, so I discuss both concurrences in this opinion.

In *Dawson*, the concurring opinion estimated that we would spend, on average, about fifteen minutes per case for every case of every kind if we followed the author's suggestions.[2] These "per case" numbers are grossly inadequate and they should have prompted the author to rethink her calculations. This Court did not dispose of 9,823 *cases* in 2015;[3] we disposed of 9,823 *matters*. This is significant because, for example, over 2600 of these matters were motions for extension and other such motions. Most of these motions are either ruled on by a single judge or disposed by the Clerk's office in accord with prior instructions by the Court without a judge ever seeing the individual motion. For instance, the Court has standing orders regarding certain motions for extension of time. No one expects a judge to be an expert at math, but the concurrence's calculations are just wrong.[4]

There are more serious problems with Judge Alcala's position though.

Her position, as expressed in her concurring opinions in this case and in *Dawson*, is internally inconsistent on its core issue. On the one hand, she says, "Nothing in the Texas Constitution, therefore, authorizes a single judge on this Court to alone decide a habeas application *or any other matter*."[5] On the other hand, she "... agree[s] with this Court's internal procedures that permit a single judge to act as a 'duty' judge to resolve certain types of procedural motions ..."[6] She also believes that, "[I]t is proper for courts to use standing orders or proxy votes in limited circumstances"[7] that "do not require assessment of factual matters and on which there is unanimous agreement ...."[8] The conclusion that such standing orders must have unanimous agreement is contrary to the concurrence's acknowledgment that the Constitution allows the Court to act with the agreement of only five judges.[9] No explanation is offered as to why such orders must have unanimous agreement and no constitutional basis is cited for the suggestion that the matter under consideration not involve the assessment of factual matters.[10] The habeas dispositions about which the concurrence complains are per curiam orders by an en banc court based on pre-approved circum-

App. LEXIS 1440 (Tex. Crim. App. November 23, 2016) (Alcala, J., concurring).

2. *Id.*, at 307, 2016 WL 6946927, *11, 2016 Tex. Crim. App. LEXIS 1440, *35.

3. *See id.*, at 306–307, 2016 WL 6946927, *11, 2016 Tex. Crim. App. LEXIS 1440, *34 (claiming that "this Court disposed of 9,823 cases").

4. If the author of the concurrence believes (as she says) that her proposal would give the judges *more* time to resolve other matters, I would again suggest that the calculations need rethinking.

5. *Id.*, at 300, 2016 WL 6946927, *5, 2016 Tex. Crim. App. LEXIS 1440, *16–17 (emphasis added).

6. *Id.*, at 303–304, 2016 WL 6946927, *8–9, 2016 Tex. Crim. App. LEXIS 1440, *26.

7. *Id.*

8. *See Bernal*, Op. at 284 (Alcala, J., concurring).

9. *See id.; Dawson*, 509 S.W.3d at 300, 303–304, 305, 2016 WL 6946927, *5, 8–9, 9–10, 2016 Tex. Crim. App. LEXIS 1440, *16, 26, 31 (Alcala, J., concurring).

10. *Bernal, passim* (Alcala, J., concurring).

stances. If, as the concurrence says, our internal procedures for motions are authorized by the Texas Constitution, then our internal procedures for habeas applications are authorized by the Constitution. The concurrence says there is a distinction between habeas applications and motions, but it does not even attempt to rely on the Constitution for the distinction. However logical the author of the concurrence might find the distinction, it is still just made up.

Every judge on this Court has easy access to every habeas application and its accompanying staff memorandum. Viewing them does not require "going to this Court's clerk's office;"[11] it just requires looking at a computer. If the author of the concurrence really wanted to read every application or staff memorandum, all she would have to do is read them. She could ask the Court to discuss any case in conference, and we would do so. But she does not want to read them, and I do not blame her, because it would not make any difference. In her opinion in *Dawson*, she complains about her lack of "meaningful participation" in habeas matters and says that even if she read all of the applications her vote "would not be given any legal effect."[12] She is correct. But the reason her vote would not be given any legal effect is not because of our internal procedures; it is because she has just one vote. When that vote is contrary to the vote of the majority of the judges, it has no legal effect.[13]

And that, I believe, is the heart of the matter. Voting in panels of three would give a judge's single vote a better chance of having "legal effect" because that judge would have to persuade only one other judge to vote her way.[14] The Court does not want cases decided by panels though; it wants every case decided *en banc*. Our current procedure accomplishes that.[15]

I join the Court in denying relief.

Keasler, J., filed a concurring opinion, in which Keller, P.J., and Hervey and Yeary, JJ., joined.

This Court properly denies Peter Bernal's application for writ of habeas corpus. The habeas judge entered findings of fact and conclusions of law and recommended that this Court deny the application.[1] After reviewing the judge's findings and conclusions, a writ staff attorney drafted a memorandum detailing Bernal's claims, determined the findings and conclusions are supported by the record, and recommended that Bernal's claims be denied based on those findings.

11. *See Dawson*, 509 S.W.3d at 304–305, 2016 WL 6946927, *9, 2016 Tex. Crim. App. LEXIS 1440, *29 (Alcala, J., concurring) ("But even assuming I could theoretically review the pleadings for each Article 11.07 writ application that has been designated for resolution by a single particular judge by going to this Court's clerk's office and examining all of the habeas filings that are pending in this Court ....")

12. *Id.*, at 305, 2016 WL 6946927, *9–10, 2016 Tex. Crim. App. LEXIS 1440, *30–31.

13. Many non-conference habeas applications have been brought to conference at Judge Alcala's request. The Court has always disposed of these cases consistently with the staff attorney's recommendation, so the disposition is the same as it would have been if they had not been brought to conference.

14. On several occasions, Judge Alcala has persuaded a single judge to join her dissenting opinions on non-conference applications.

15. I address only the most serious flaws in the concurrences' position, but it is worth noting that we do not vote "by proxy," we do not "delegate" our discretion to others, and "docketing" a case does not mean what the concurrence thinks it means.

1. Writ C.R. 111–16.

The author of the other concurring opinion, to whom this writ application was administratively assigned, agreed with the writ staff attorney's recommendation that Bernal's application be denied because it is meritless. The same author sought the formal votes from the entire Court, but it was not legally necessary. Because this application satisfied the criterion in the Court's standing internal procedures, she had the authority to lawfully deny Bernal's application by her signature alone.

The concurrence accuses the Court's judges of violating the Texas Constitution and statutes in how the Court resolves certain applications for writ of habeas corpus. The accusations require a response. We have never had to explain this long-established practice, much less defend it. Yet we find ourselves defending it today, and by extension the Court itself, against an attack from one of our own—one who candidly admits to willfully doing for the last five years what she now suddenly condemns. I hope this response provides further insight and transparency into the Court's inner workings.

Long before I arrived at this Court in 1999, the Court's judges instituted standing internal procedures and rules permitting certain Texas Code of Criminal Procedure Article 11.07 writ applications to be administratively and randomly assigned to a single judge for review and, if warranted, resolution. The standing procedures regarding these "non-conference" writ applications experienced only slight revisions over the years as needed and remain, in effect today, substantively unchanged.

"Non-conference" writ applications are narrowly defined. Every application for a writ of habeas corpus this Court receives is initially reviewed by a writ staff attorney who focuses solely on Article 11.07 writ applications and extraordinary writ petitions. After reviewing the entire writ record, including any habeas judge's findings of fact and conclusions of law, writ staff draft memoranda analyzing every claim an applicant asserts. Only when the writ staff attorney and the assigned judge of this Court (normally in consultation with his or her own staff) agree that an application is meritless may a judge deny or dismiss the application without formally collecting the other Judges' votes. A vast majority of non-conference writ applications fail to allege sufficient facts that, if pleaded and determined to be true, may entitle them to relief,[2] including those asserting the particular claims the concurrence highlights. Ineffective-assistance-of-counsel claims often fail to plead why counsel's deficit performance prejudiced them. *Brady v. Maryland*[3] claims are often unaccompanied by any explanation why certain evidence was material. Some "new evidence" claims arrive without explanations why the evidence is new. A significant number of these applications contain a habeas judge's findings of fact, conclusions of law, and recommendation that this Court deny or dismiss the application. Even more assert claims that may not be brought on habeas corpus or are statutorily or procedurally barred.

In all other circumstances, an application receives all of the judges' individual, formal votes. These include, for example, when (1) in a writ staff attorney's opinion, the record or the law may support an applicant's claim to relief despite the habe-

---

**2.** *See Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex. Crim. App. 1985) ("In a postconviction collateral attack, the burden is on the applicant to allege and prove facts which, if true, entitle him to relief.").

**3.** 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

as judge's recommendation to deny or dismiss; (2) remanding to the habeas court is appropriate to gather additional findings of facts concerning the claim (when the case returns from remand, it also receives all of the judges' individual, formal votes); (3) the writ staff attorney recommends the application be filed and set to be resolved with an opinion because applicant raises a novel legal argument or the law applicable to a claim is unclear; (4) an adequately pleaded application presents a close legal or factual question of whether the claim should be granted or denied under settled law and the writ staff attorney recommends all judges review the application; (5) the writ staff attorney or the habeas judge recommends granting some form of relief; (6) the assigned judge disagrees with the habeas judge's or writ staff's recommendation; or (7) the assigned judge, in his or her discretion, calls for the other judges to formally vote.

Texas Code of Criminal Procedure Article 11.07, § 5 provides that "[t]he Court of Criminal Appeals may deny relief upon the findings and conclusions of the hearing judge without docketing the cause," or the Court may docket the cause and hear the writ application like an appeal. A single judge's denial or dismissal of a "non-conference" application is an example of the former; filing and setting an application for an opinion an example of the latter. The concurrence correctly notes that § 5 empowers the Court of Criminal Appeals to decide an application's merits and grant or deny an applicant relief. But even assuming the statute's use of "Court of Criminal Appeals" means the Court sitting en banc or in panels, as the concurrence alleges the Texas Constitution requires,

the remainder of the opinion mischaracterizes the Court's established procedures.

Although required by neither the Constitution nor statute, the Court resolves every habeas corpus application en banc, and does so in a manner consistent with our Constitution. Texas Constitution Article V, § 4(b) mandates, among other things, that when the Court considers a case en banc, "five Judges shall constitute a quorum and the concurrence of five Judges shall be necessary for a decision." Section 4 imposes no limitations on this Court as to how the necessary concurrence may be achieved. The Constitution does not mention, much less prescribe, the manner of voting on a particular matter. It does, however, permit the Court to establish rules for how the en banc Court convenes.[4]

The internal operating procedures establish both how the Court convenes on "non-conference" applications and how a concurrence of at least five judges forms. Importantly, the procedures' adoption required and garnered the concurrence of at least five Judges. By permitting a judge to dispose of specific writ applications, the remaining judges have authorized the judge to whom the application is assigned to act on their behalf in those limited, delineated circumstances. So when a "non-conference" application is denied or dismissed, the assigned judge disposes the application with the concurrence of not fewer than five judges of the en banc Court. In practical terms, the application's denial or dismissal is nothing more than a *per curiam* order, an action taken for the Court as a whole under very specific circumstances.

The competing concurrence takes issue with the *per curiam* order analogy be-

---

4. TEX. CONST. art. V, § 4 ("The Presiding Judge, under rules established by the court, shall convene the court en banc for the transaction of all other business and may convene the court en banc for the purpose of hearing cases.").

cause, in her opinion, *per curiam* orders are only proper based on pre-approved circumstances that do not require assessment of factual matters and on which there is unanimous agreement.[5] But the proposed boundaries for *per curiam* orders would not permit many of the Court's other practices, none of which are contested. For instance, this approach would not permit the Court's current procedure establishing a rotating "duty judge" to grant or deny certain motions—procedures the concurring author has never contested—that require assessment of factual matters. The Court's summary dismissals of writ applications failing to comply with the Texas Rules of Appellate Procedure are also notably absent from the concurring author's concerns. Those applications are dismissed without a judge's approval, even though we may, and in certain cases do, overlook noncompliance if the application's merits are clear.[6] Nonetheless, the concurrence would surely agree that our procedures properly deny or dismiss an application lacking a necessary factual pleading and need not be formally voted on by the en banc Court or even a three-judge panel. After all, there would be no factual matter to assess in applying our legal standards.

Of course, the en banc Court is free to change these institutional practices at any time. But the continued practice of this established procedure by the Court's majority evinces the judges' confidence that the Court's procedures are fair, efficient, and constitutional.

To be sure, the Court's procedure on non-conference writ applications does not give a single judge a monopoly on that application's disposition. A judge and his or her staff have always had the ability to review any pleading this Court receives.

By virtue of the Court's move to electronic records maintained in a central repository, judges and their staffs can now more quickly and easily review electronically every pleading shortly after it is received. All of writ staff's memoranda analyzing each claim on every application are available for review electronically in a common repository. And through the Court's internal case-management system, all judges and their staffs can view the status of any matter and learn to whom it is assigned. The procedures do not prevent a judge from requesting discussion on a particular application, even one not assigned to that particular judge. As a member of this Court for five years, the concurring author is undoubtedly aware that a request to discuss a matter means that all judges discuss the matter in conference and all judges may participate in the matter's resolution. Allegations that these procedures deny any judge of this Court the ability to review and decide applications, especially to the degree it deprives that judge of purported "rights," are legally and factually unfounded.

With these comments, I concur in the Court's denial of Bernal's claims.

Hervey, J., filed a concurring opinion in which Keasler, J., Richardson, J., and Newell. J., joined.

I write separately to dispel any notion that criminal defendants, rich, poor, or otherwise classified, receive anything less than full and just review of their cases before this Court.

The manner in which we address writs of habeas corpus has been much debated but that issue was decided years ago and was recently reconfirmed by a majority of our members. However, condemnation of

5. *See post,* at 279–80 (Alcala, J., concurring).

6. *See, e.g., Ex parte Golden,* 991 S.W.2d 859,

861 (Tex. Crim. App. 1999).

our policy continues and therefore I write to add a few points in support of our majority position. First, I do not read the much cited Texas Constitution to prevent an individual judge from taking action on an individual writ. This has been a feature of our procedures for decades, and to alter that process at the suggestion of one judge ignores all of the work of the men and women "behind the curtain," the judges, their staff, and the collective ability and years of practice reading, researching, discussing and making decisions on all of the matters presented to this court, of last resort. It also ignores all of the work and legal knowledge applied by the parties in courts below.

Yes, this court handles thousands of writs a year but a writ can allege very simple matters, or they may be demanding and time consuming such as those raising new issues in a capital murder/death penalty case. Each matter is afforded whatever individual time and consideration it demands.

But, unlike detractors from our procedure, I have full faith that our staff is immensely equipped to review an application for habeas corpus and to make appropriate recommendations for appropriate action to be taken by the judges of this court. Many writs, such as those containing complex issues, are automatically distributed to a full court. Others, however, are randomly assigned among the nine chambers where judges and their staff likewise review them. I also have faith in our elected judges to know the law or learn what is necessary and to know when and if additional assistance from the full court and/or our court staff may be required or helpful in deciding appropriate actions to be taken—in any matter, not only applications for post-conviction relief.

ALCALA, J., filed a concurring opinion.

In the movie "My Cousin Vinny," the menu choices at a restaurant were breakfast, lunch, and dinner, without any further detail. Similarly, this Court's approach to habeas relief broadly gives staff attorneys categories of cases that may be presented to a single judge for denial of relief without a quorum of this Court ever seeing the application or participating in a vote. For Vinny, the only consequence of the broad category was the potential of a bad meal. But for hundreds and possibly thousands of habeas applicants challenging their final felony convictions based on claimed constitutional violations, the consequence of the broad category is the denial of habeas relief by a single judge on this Court who alone acts as a proxy for the other eight judges, none of whom have actually seen or voted on the cases. The other concurring opinions filed in this case and in *Ex parte Dawson* have essentially admitted that hundreds, if not thousands, of habeas writs are being seen and denied on their merits by only a single judge on this Court rather than decided by the actual review and vote as to each case by a quorum of this Court's judges. *See Ex parte Dawson*, No. WR–85,612–02, 509 S.W.3d 294, 2016 WL 6946927 (Tex. Crim. App. Nov. 23, 2016) (Keasler, J., concurring). If, as a citizen of the State of Texas, you elected the judges to this Court so that they would delegate their discretionary decision-making to other judges on this Court or to staff members, then you will be satisfied with this Court's current system for the ultimate resolution of habeas writs. Stop reading here if that applies to you. For everyone else, the current system is a failure. It violates at least three established principles that ordinarily guide the judiciary. First, judges should abide by the terms of the constitutions and law as written, but the current system does not do

that.[1] Second, judges should not delegate judicial discretionary decisions to staff members, no matter how talented they may be, but that is precisely what is occurring now in this type of case. Third, each judge must individually decide each case that results in a final decision so that denial of habeas relief stems from a determination by a quorum of judges on this Court. That does not occur in these cases. In light of the violations of these three principles, it is wholly inaccurate to suggest that *all* cases in which habeas relief is denied by this Court have received a full review because it is undisputed that hundreds, if not thousands, of cases are being denied by a single judge on this Court rather than by a quorum of the en banc Court. Because this particular case was assigned to me, a judge who believes that all denials of habeas relief must be determined by a quorum of judges on this Court, this Court's decision denying this post-conviction habeas application filed by Peter John Bernal, applicant, has been decided by the en banc Court. I write separately to show how the broad areas of law and particular fact patterns presented by Article 11.07 habeas applications do not generally lend themselves to a proxy vote, even if the Texas Constitution and the Code of Criminal Procedure permitted that, which they do not.

In my recent concurring opinion in *Ex parte Dawson*, I voiced my concerns that this Court's internal procedures for resolving some Article 11.07 habeas applications do not comply with the Texas Constitution and Code of Criminal Procedure because, in many instances, only a single judge reads the application, and he alone decides the ultimate merits of the application by denying relief without participation by a quorum of judges. *Ex parte Dawson*, No. WR–85,612–02, 509 S.W.3d 294, 2016 WL 6946927 (Tex. Crim. App. Nov. 23, 2016) (Alcala, J., concurring). I explained that the Texas Constitution and Code of Criminal Procedure require a decision by a quorum of five judges of the en banc Court or by two judges of a three-judge panel that has been assigned to the case. *Id.*, at 299–300 (citing Tex. Const. Art. V, § 4(b); Tex. Code Crim. Proc. Art. 11.07). I noted that, in contrast to the proper use of standing orders for the administrative resolution of various motions that do not result in an ultimate denial of habeas relief, this Court's permissive use of a standing order or vote by proxy in this type of situation is inappropriate because the single judge's ruling constitutes a final judgment denying

---

1. In my recent concurring opinion in *Ex parte Dawson*, I explained why this Court's practice of permitting only a single judge to deny habeas relief without participation by a quorum of judges conflicts with the terms of the Texas Constitution and Code of Criminal Procedure. *Ex parte Dawson*, No. WR–85,612–02, 509 S.W.3d 294, 2016 WL 6946927 (Tex. Crim. App. Nov. 23, 2016) (Alcala, J., concurring). I explained that the Texas Constitution and Code of Criminal Procedure require a decision by a quorum of five judges of the en banc Court or by two judges of a three-judge panel that has been assigned to the case. *Id.*, at 299–300. In apparent response, without citation to any authority, explanation, or anal-

ysis, the author of another concurring opinion in this case declares that she does "not read the much cited Texas Constitution to prevent an individual judge from taking action on an individual writ." Judges must be guided by the plain language in the Texas Constitution rather than interpreting it in a matter that is most convenient for this Court's formulaic denial of relief to habeas applicants based on a blind assessment of categories of cases. Because I believe in applying the constitutions and law as written, I have detailed, analyzed, and explained why the plain language of the Texas Constitution and Code requires a decision by a quorum of judges before habeas relief may be denied.

relief to habeas applicants on the merits of their complaints. *Id.*, at 303–304.

Importantly, in *Dawson*, a majority of the judges on this Court appeared to agree that, in the absence of a standing order or proxy vote, a single judge would lack the authority to deny relief to an Article 11.07 habeas applicant in the absence of a quorum of judges. The central dispute between a majority of the judges on this Court and myself was as to whether a standing order or proxy vote could be properly used for designated categories of habeas applications so that a single judge would, by proxy vote, establish a quorum of judges, even though only one judge saw, voted, and participated in the actual decision to deny habeas relief in the particular case. A further dispute centered on whether the designated categories of habeas applications that are presently being resolved through assignment to a single judge involve narrow, specifically delineated circumstances, which was the view held by a majority of the members of this Court, or whether these involve broad discretionary application of the law to the facts on a wide variety of legal issues, which was my position. As I will explain further below, in my view, the types of legal issues currently being resolved pursuant to this Court's internal operating procedures that permit a single judge to deny relief on an Article 11.07 habeas application are not conducive to resolution by a single judge based on a standing order or proxy vote.

By way of example, I note that the underlying facts in *Dawson* showed that Dawson was convicted of forgery of a financial instrument and sentenced to ten years' imprisonment. In his pro se Article 11.07 habeas application, Dawson contended that his sentence was illegal and that his trial counsel was ineffective for failing to research the facts and law relevant to his case. In particular, he alleged that counsel was ineffective for failing to investigate whether applicant's prior convictions were properly used to enhance the punishment range for the instant offense. The habeas court received an affidavit from trial counsel responding to applicant's allegations, but it did not make findings of facts or conclusions of law addressing applicant's claims, nor did it make any recommendation to this Court as to whether relief should be granted or denied. Despite the fact that the legal issues were complicated, in the sense that they involved claims about an illegal sentence and ineffective assistance of counsel, and even though there were no fact findings by the habeas court so that original factual determinations would have to be made by this Court, a majority of this Court determined that it would have been permissible for a single judge to deny habeas relief to Dawson without any other judge on this Court ever seeing or voting on his application. *Id.*

As in *Dawson*, here I will attempt to show that this Court has painted with a broad brush the categories of claims that may be resolved by the vote of a single judge and, therefore, that, as a practical matter, a standing order or proxy vote for these cases is inappropriate. In this case, as in *Dawson*, Bernal is complaining about significant legal issues that require a critical application of the law to the facts appearing in the record. Bernal alleges in his application that (1) trial counsel was ineffective for failing to investigate the evidence against him, (2) he was denied appellate review by relying on counsel's advice to plead guilty, and (3) the State failed to prove or introduce any evidence to support the allegations in the indictment. Like *Dawson*, this case that was designated by a staff member as one that should be denied by a single judge presents claims that require careful analysis and facts that might reasonably lead two

different judges to reach different conclusions as to how the case should be resolved. But unlike *Dawson*, in which the habeas court did not make any findings of fact or conclusions of law, the habeas judge in this case did make findings and conclusions, and he recommended to this Court that relief be denied. Although the existence of findings and conclusions supporting a habeas court's recommendation that relief be denied may make it more likely that this Court will ultimately deny relief, the decision of whether to grant or deny relief or whether to remand the case to the habeas court for additional factual determinations necessarily involves a discretionary review of facts that could result in this Court's disagreement with the habeas court's findings and conclusions. The purported standing order employed by this Court permits a single judge to deny habeas relief despite the fact that the areas of law are complicated and that the fact patterns require judicial scrutiny and discretion before a proper decision may be reached in each case. Because discretionary decision-making must occur in this Court's review of a habeas court's findings and conclusions, a standing order or proxy vote may not properly replace a decision on the ultimate merits by a quorum of judges.

As I explained in my concurring opinion in *Dawson*, reasonable minds can disagree as to the correct legal analysis of many of the issues raised in a habeas application, particularly when presented in a myriad of different factual contexts. *Dawson*, No. WR–85,612–02, 509 S.W.3d at 304–305, 2016 WL 6946927. For example, ineffective assistance of counsel is a common habeas claim and was alleged in both *Dawson* and the instant case. Resolving this type of claim requires deciding whether counsel's acts or omissions fell below an objective standard of reasonableness based on prevailing professional norms and whether there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688–90, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999). Further, the representation must be viewed in its totality and assessed according to the "facts of each case." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Without examining the particular facts of the case, including the evidence and testimony in the record, it is impossible to determine whether, under the totality of the representation, counsel's performance was deficient or if an applicant was prejudiced. Just as this Court as a whole may disagree with the habeas court's findings of fact and conclusions of law, individual judges on this Court may come to different conclusions regarding the proper resolution of an applicant's ineffective assistance claim based on an examination of the pleadings and the record.

Bernal's application presents a compelling illustration that the types of decisions involved in resolving these applications are highly discretionary. With respect to Bernal's contention that the State failed to prove or introduce any evidence to support the allegations in the indictment, one judge might examine that claim and decide that this was merely a challenge to the sufficiency of the evidence, which would make habeas relief inappropriate, while another judge might conclude that this was a challenge to the absence of any evidence of the offense, which would make habeas relief appropriate. *See Ex parte Knight*, 401 S.W.3d 60, 64 (Tex. Crim. App. 2013). It is precisely this type of discretionary evaluation of pleadings and facts that make a standing order or proxy vote inappropriate for ultimate decisions that result in a denial of habeas relief to applicants when their

pleadings have not been reviewed by a quorum of judges on this Court.

Involuntary pleas resulting from the erroneous advice of counsel are another common habeas claim, and judges must undertake the same type of fact-intensive analysis in that context. *See Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (to establish a claim of involuntary plea based on ineffective assistance of counsel, an applicant must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's errors, the applicant would not have pleaded guilty and would have insisted on going to trial); *see also Padilla v. Kentucky* 559 U.S. 356, 372, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) (noting that, to be entitled to relief in this context, applicants must show that the decision to reject a plea bargain would have been rational under the circumstances). Challenges to the State's failure to disclose *Brady* material are also cognizable on habeas review. Analyzing *Brady* claims requires that judges assess the materiality of the inadvertent or willful suppression of exculpatory evidence. *See Ex parte Reed*, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008). To properly analyze these claims, judges must examine whether the failure to disclose the evidence created a reasonable probability that the outcome of the proceeding would have been different. *Id.* at 727. Thus, in many instances, determining whether an applicant has a viable *Brady* claim also requires looking at the totality of the record. Even if the habeas court has made findings of fact and conclusions of law, judges of this Court must still ensure that those findings and conclusions are supported by the record prior to relying on those findings and

conclusions as a basis for granting or denying relief. *See id.* at 727–29. A single judge acting as a proxy for other judges who have reviewed neither the pleadings nor the record cannot assume that the other judges of this Court would view the record or pleadings in a manner identical to his own view. Nor can he realistically assume that the other judges would make the same decision regarding whether counsel's performance was objectively reasonable, for example, or whether there is a reasonable probability that the result of the proceeding would be different in the absence of any error, or whether there is a reasonable probability that an applicant would have rationally rejected a plea agreement and insisted on going to trial. Both *Dawson* and the instant case illustrate why the unique facts and circumstances of each case that necessitate conducting a careful legal analysis prohibit accurately classifying these claims into consistent categories that would allow them to be properly disposed of with a formulaic standing order.

Rather than attempt to provide any legal authority to support the suggestion that a single judge on this Court has the authority to alone deny relief on an Article 11.07 habeas application, the concurring opinion by Presiding Judge Keller resorts to using disparaging remarks about me, such as suggesting that I may be confused, that I am making things up, and that I am bad at math. I will refrain from that type of discourse. In the interest of accuracy, I make three responses to her concurring opinion. First, even accepting that this Court decided 7,223 cases in 2015, as opposed to 9,823 total matters, that means that the judges of this Court would have had, on average, about fifteen minutes to spend on each case.[2] This is only true, of

---

2. If he worked fifty weeks per year at forty hours per week, a judge would work 2,000 hours a year. At that rate, he would have about fifteen minutes, on average, to decide

course, if one assumes that all such cases were decided by the en banc Court with each judge actually reviewing and voting on each case, which, I recognize, is not presently the situation under the current system that permits many habeas applications to be resolved by a single judge alone. In any event, if this Court were to decide habeas writs in panels of three, as I have suggested, rather than en banc with each judge actually participating in each decision, then it is undisputed that this Court's judges would have more time, on average, to decide each case and would likely reach better decisions in all of our cases. That was the point of my analysis, and that is an undisputed fact at this juncture.

Second, the concurring opinion by Presiding Judge Keller obfuscates the difference between a single judge's ruling on certain procedural motions and a single judge's ruling denying habeas relief. She equates, for example, a dismissal of an appellate brief for exceeding the permitted word count with a final judgment denying habeas relief on the ultimate merits of a habeas application. Unless a dismissal is with prejudice or pertains to a subsequent habeas application, ordinarily a litigant can refile a dismissed matter, so a single judge's ruling of that type is not a disposition on its ultimate merits. In contrast, a denial of habeas relief such as the type at issue here is a ruling on the ultimate merits of a habeas application. The consequences of a denial of habeas relief are dire for a habeas applicant. The denial of habeas relief by a single judge means that an applicant has exhausted his one opportunity to have a single bite at the habeas apple for obtaining relief. Unless he can

produce new law or new facts, an applicant gets only one chance to demonstrate that he is entitled to habeas relief, and, under the practices defended by the other concurring opinions in this case and in *Dawson*, a single judge is permitted to deny that habeas relief without any other judge even seeing or voting on that application. But if Presiding Judge Keller is correct that procedural dismissals on motions are the equivalent of denials of habeas relief on the ultimate merits of cases, then, because the Texas Constitution and Code of Criminal Procedure require a quorum of judges to decide cases, the answer is to discontinue standing orders for procedural dismissals. The answer is not that a single judge may deny habeas relief.

Third, the other concurring opinions have suggested that I could read any habeas application that I want to read that has been filed in this Court, and that I could ask that any or all of these cases be discussed at this Court's conferences so as to require a quorum of five judges in order to resolve the case. But this suggestion ignores that I have already asked to be permitted to vote on all of these habeas applications and that I have requested that all of them be brought for a vote by the en banc Court, to no avail.

This is the bottom line. None of the concurring opinions have provided any authority that would permit a single judge on this Court to deny habeas relief on the ultimate merits of an Article 11.07 habeas application. Also, all of the concurring opinions admit that they approve of the practice of a single judge on this Court denying habeas relief on the ultimate merits of habeas applications with-

the 7,223 cases that the concurring opinion by Presiding Judge Keller suggests is the accurate number by which to measure a judge's time on this Court. I do not concede that all motions may be decided by a single judge on

this Court—some are and some are not—but, because, even excluding motions from my calculations, the numbers support my analysis, I leave that discussion for another day.

out the participation and vote of a quorum of judges. Furthermore, all of the concurring opinions do not dispute that the habeas applications on which relief is being denied by a single judge involve a wide variety of issues, including claims of ineffective assistance of counsel, *Brady* violations, involuntary pleas, and other constitutional violations. On some occasions when I have been permitted to see the habeas applications that were designated for a single judge's decision, I have written dissenting opinions suggesting that I would either grant relief or remand the cases to the habeas court for factual development.

In sum, in spite of the strong opinions held by several members of this Court indicating that the Court's current practices are both permissible and desirable, I maintain my view that Article 11.07 habeas applications must be decided by a quorum of this Court and not by a single judge who alone renders a final decision on the merits denying relief. This result follows from the plain language of both the Texas Constitution and the Code of Criminal Procedure. Furthermore, as explained above, the resolution of Article 11.07 habeas applications frequently requires discretionary application of legal reasoning to unique factual circumstances. Even assuming that a standing order or proxy vote method satisfies the Texas Constitution's and Code's quorum mandate, such a system is wholly unfit to ensure that this Court denies relief accurately and consistently.

"My Cousin Vinny" was a fictional movie showing the wrongful arrest and accusation of innocent people, but that is a real occurrence in our criminal justice system as shown by the case of Michael Morton, who was released from prison on precisely the same type of habeas writ that was filed

in this and similar cases that this Court has allowed a single judge to decide. This is wrong. With these comments, I respectfully concur in the judgment of the Court.